UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

SONAE CURRY, an
individual

        Plaintiff,                Case No. 1:23-cv-

vs.

TRINITY HEALTH-MICHIGAN, a
corporation

        Defendant.

---

William F. Piper (P38636)
William F. Piper, PLC.
*Attorney for Plaintiff*
1611 W. Centre Ave., Suite 209
Portage, MI 49024
(269) 321-5008
wpiper@wpiperlaw.com

---

## **COMPLAINT**

The plaintiff, Sonae Curry, by and through her attorney William F. Piper, PLC, for her complaint, states as follows:

### **JURISDICTIONAL ALLEGATIONS**

1.      The plaintiff Sonae Curry is an African American woman who lives in the City of Muskegon, County of Muskegon, State of Michigan and she lived there at all times relevant to this complaint.

2.      The defendant is a corporation that at all times relevant to this complaint operated a hospital in the City of Muskegon providing medical services to the public.

3.      The claims in this action arise in part under 42 USC §1981.

4.      Jurisdiction arises under 28 USC §1331 and 28 USC §1343.

1

5.    Certain claims in this action arise under this court's supplemental jurisdiction to hear and

decide state law claims arising out of the same transactions and occurrences as the federal law

claims.

## COMMON ALLEGATIONS

6.    The plaintiff restates and realleges as though fully set forth herein paragraphs 1-5 of this

>    complaint.

7.    The defendant or its predecessor Hackley Hospital hired Ms. Curry to work for it in

>    September 2002 as a patient care assistant.

8.    In 2005 the defendant transferred Ms. Curry into a position of unit coordinator in the

intensive care, behavior health and surgical units.

9.    Throughout her employment Ms. Curry did a good job for the defendant.

10.    Before her termination Ms. Curry had never received a written warning of any kind.

11.    Before her termination Ms. Curry had, upon information and belief, only received one

verbal warning.

12.    On October 2, 2020, Ms. Curry noticed that a charge nurse was verbally berating and

degrading an African American patient, who had become agitated.

13.    The charge nurse gave the patient an overdose of a drug, and the patient became

unresponsive.

14.    The patient then died in the next day or so of the overdose given by the charge nurse.

15.    While watching what was happening, Ms. Curry in distress, told the charge nurse that she

could not believe that she had overdosed the patient.

16.    The charge nurse heard Ms. Curry's comment.

17.    After hearing Ms. Curry make the comment the charge nurse threw a schedule at Ms. Curry.

18.    Ms. Curry told the charge nurse not to do what she had done.

19.     The charge nurse then called Ms. Curry a "nigger bitch" and told her to go home.

20.     Referencing the chain of command, Ms. Curry told the charge nurse that she could not tell her to go home.

21.     After her shift ended shortly thereafter Ms. Curry did go home.

22.     On October 3, 2020, after she had gone home, Ms. Curry called the defendant's integrity line to complain about the malpractice, specifically, the overdose of the African American patient by the charge nurse.

23.     In the call Ms. Curry referenced racism with respect to the degrading treatment of the African American patient who was overdosed.

24.     Afterwards, the charge nurse and supervisors then complained to Ms. Curry about how "you people," referring to African Americans, all stick together.

25.     The defendant, after Ms. Curry called the integrity line, took Ms. Curry off work for several shifts, giving her no explanation for doing so.

26.     On October 16, 2020, in a meeting, the defendant's human resources representative  asked Ms. Curry a number of questions about her friendship or knowledge, of, and her family's friendship and knowledge of, the African American patient who was overdosed and whether she had gone to school with the patient or any members of the patient's family.

27.     The defendant also asked Ms. Curry how long she had lived in Muskegon, what church she belonged to, where she grew up, and when she had moved to Muskegon.

28.     The defendant also asked Ms. Curry if she had called the family of the African American patient after he was overdosed, and whether the she had any interactions with the patient's family outside of the hospital.

29.      Ms. Curry objected to and was offended by the racially biased and stereotyped questions.

30.     On November 2, 2020 the defendant terminated Ms. Curry's employment by it for

allegedly for making a false statement.

31.     The defendant's asserted reason for terminating Ms. Curry's employment by it was a

pretext.

32.     On or about the day the defendant terminated Ms. Curry's employment the defendant

terminated the employment of at least four other African American medical care employees, but

kept comparator white employees.

33.     The family of the man who was overdosed than brought a successful medical malpractice

lawsuit against the defendant, and Ms. Curry was a witness in that lawsuit.

34.     As a result of the defendant's termination of her employment by it Ms. Curry has suffered

and will continue to suffer a loss of income and benefits, emotional distress, loss of enjoyment of

life and other injuries and damages.

## COUNT I – RACE DISCRIMINATION

35.     The plaintiff restates and realleges as though fully set forth herein paragraphs 1-34 of this

complaint.

36.     The defendant terminated Ms. Curry's employment because of her race.

37.     This claim is actionable under 42 USC §1981.

38.     This claim is also actionable under the Elliott-Larsen Civil Rights Act, MCL 37.2101 et.

seq.

39.     As a result of the unlawful termination set forth above, Ms. Curry has suffered and will

continue to suffer the damages set forth above.

        WHEREFORE, the plaintiff requests a judgment against the defendant that would include

back pay, instatement in a appropriate position and other equitable relief, including front pay;

compensation for all intangible damages past and future, punitive damages, costs, interest,

attorneys fees under state law and under 42 USC §1988, and any other relief this Court deems

4

fair and just.

## COUNT II -RETALIATION

40.     The plaintiff restates and realleges as though fully set forth herein paragraphs 1-39 of this complaint.

41.     The defendant terminated Ms. Curry's employment by it in retaliation against her because she had complained about racist treatment of both the African American patient and her as set forth above.

42.     This claim is actionable under 42 USC §1981 and under the Elliott-Larsen Civil Rights Act, MCL 37.2701.

43.     As a result of the conduct set forth above, Ms. Curry has suffered and will continue to suffer the damages set forth above.

WHEREFORE, the plaintiff requests a judgment against the defendant that would include back pay, instatement in a appropriate position and other equitable relief, including front pay; compensation for all intangible damages past and future, punitive damages, costs, interest, attorneys fees under state law and under 42 USC §1988, and any other relief this Court deems fair and just.

Dated: September 14, 2023                    WILLIAM F. PIPER, PLC.
                                                        Attorney for Plaintiff

                                             By:    /s/ William F. Piper
                                                        William F. Piper (P38636)
                                             BUSINESS ADDRESS:
                                                        1611 West Centre Ave., Ste 209
                                                        Portage, Michigan 49024
                                                        Phone: 269.321.5008
                                                        Fax: 269.321.5009